## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHACARAH SCOTT and JOSHUA TUCKER, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 3:19-cv-00164-SMY-MAB |
| v. | ) ) | Judge Staci M. Yandle |
| SYNCREON NORTH AMERICA, INC., | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................................2

    A.     Illinois' Biometric Information Privacy Act...........................................................2

    B.     Plaintiffs' Allegations and Defendant's Biometric Timekeeping System..............3

    C.     Litigation, Mediation and Settlement. ....................................................................3

III.   TERMS OF THE SETTLEMENT AGREEMENT ....................................................4

    A.     Class Definition. .....................................................................................................4

    B.     Settlement Payments...............................................................................................4

    C.     Prospective Relief. ..................................................................................................5

    D.     Payment of Settlement Notice and Administrative Costs........................................5

    E.     Payment of Attorneys' Fees, Costs, and Incentive Award. ....................................5

    F.     Release of Liability.................................................................................................5

IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
      SETTLEMENT PURPOSES. ...............................................................................6

    A.     The Numerosity Requirement is Satisfied. .............................................................6

    B.     Common Issues of Fact and Law Predominate........................................................7

    C.     The Adequacy Requirement is Satisfied..................................................................8

    D.     A Class Action Is A Superior Method Of Resolving The Controversy.................10

    E.     The Class Is Ascertainable....................................................................................11

V.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL..........12

    A.     Plaintiffs and Proposed Class Counsel Have Adequately Represented the
          Settlement Class.....................................................................................................13

i

B.      The Settlement Was Reached Without Collusion and As a Result of Arm's-Length Negotiations Between the Parties. ...........................................................16

C.      The Settlement Treats All Settlement Class Members Equally............................17

D.      The Relief Secured for the Settlement Class Is Adequate and Warrants Approval. ...............................................................................................................17

        1.      The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval................................................17

        2.      The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval...............................................19

        3.      The terms of the requested attorneys' fees are reasonable. ......................20

VI.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.....................................21

VII.  CONCLUSION.............................................................................................................22

## I.      INTRODUCTION

Plaintiffs Shacarah Scott and Joshua Tucker ("Plaintiffs"), on behalf of themselves and a putative class, allege that Defendant syncreon.US, Inc.[1] ("Defendant" or "syncreon.US"), violated Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 et seq., by collecting employee fingerprints without providing the requisite disclosures or obtaining informed written consent.  After exchanging informal discovery and engaging in a full-day mediation, the Parties have reached a class-wide settlement that provides relief for the entire Settlement Class.

Some BIPA settlements have been for zero cash and given the class credit monitoring. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cty. Jun. 6, 2018).  Not so here.  Defendant has agreed to create a fund of $50,600 consisting of $550.00 per Settlement Class member, and—after fees and costs are deducted—checks will be sent directly to all Settlement Class members who are current employees.  For Settlement Class members who are former employees, Class Members need only submit a simple form in order to receive a check.

Class action settlements are reviewed for approval in a well-established two-step process. 4 NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2011).  First, the Parties present the settlement agreement for preliminary approval to the Court, and the Court determines whether it will "likely be able to" grant final approval of the agreement, determining whether the Class should be notified of the settlement, conditionally certifying the class, and setting the case for a final fairness hearing. *Id.*; *see also* Fed. R. Civ. P. 23(e)(1)(B). If preliminarily approved, notice is then sent to the Settlement Class and any objections or exclusions from the Settlement Class are collected.

---

[1] Plaintiffs incorrectly named syncreon.US, Inc. as Syncreon North America, Inc. in their Complaint.

Second, the Court holds a final fairness hearing to determine whether the settlement is "fair, reasonable, and adequate," and should be finally approved. *See* 4 NEWBERG ON CLASS ACTIONS § 13:39; *see also* Fed. R. Civ. P. 23(e)(2).

This matter is at that first stage. Given the relief proposed by the Settlement Agreement, the Court should not hesitate to find that the Settlement is well within the range of possible approval and should, accordingly, preliminarily approve it and direct notice to the Settlement Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Illinois' Biometric Information Privacy Act.

Recognizing the "very serious need" to protect Illinois citizens' biometric data—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—the Illinois Legislature unanimously passed BIPA in 2008 to provide individuals recourse when companies failed to appropriately handle their biometric data in accordance with the statute. (740 ILCS 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:"

(1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information . . . .

740 ILCS 14/15(b).  BIPA also requires any company in possession of biometric data to establish a publicly-available retention schedule and guidelines for permanently destroying

biometric data.  740 ILCS 14/15(a).  BIPA further requires companies in possession of biometric data to protect the data from disclosure using a reasonable standard of care, 740 ILCS 14/15(e), prohibits companies from selling or otherwise profiting from a person's biometric data, 740 ILCS 14/15(c), and prohibits them from disclosing or disseminating biometric data except with consent or under limited circumstances. 740 ILCS 14/15(d).  BIPA allows for the recovery of damages in the amount of $1,000 for each negligent violation—or $5,000 for each willful violation—plus costs and reasonable attorneys' fees. *See* 740 ILCS 14/20.

      **B.**    **Plaintiffs' Allegations and Defendant's Biometric Timekeeping System.**

Plaintiffs allege that they worked for syncreon.US "during the relevant time period" and that they provided their "biometrics, in the form of fingerprints" to syncreon.US. (Compl. ¶¶ 45–46.)  Plaintiffs allege they were "required" to provide their fingerprints to syncreon.US and then scan their fingers to "clock-in" and "clock-out" of work using syncreon.US's "biometric timekeeping mechanisms." (*Id.* ¶¶ 46–47.) Plaintiffs further allege that syncreon.US captures, collects, stores, and uses employees' "fingerprints" for timekeeping and payroll purposes. (*Id.* ¶ 26.)  According to Plaintiffs, they were not informed in writing that their purported biometric information was being collected, nor provided with a written release. (*Id.* ¶ 49.)  Finally, Plaintiffs allege that they experience "mental anguish and injury when they think about the status of their biometrics." (*Id.* ¶ 57.)

      **C.**    **Litigation, Mediation and Settlement.**

On February 11, 2019, Plaintiffs filed their Complaint in the United States District Court for the Southern District of Illinois.  Defendant moved to dismiss Plaintiffs' BIPA claims and multiple common law claims on the grounds that Plaintiffs failed to plead negligence, recklessness, or intent, that their common law claims were duplicative or otherwise failed to state a claim, and that their claims were preempted by the Illinois Workers' Compensation Act.  The

3

parties fully briefed that motion, then sought a stay to discuss settlement opportunities. The Parties scheduled a mediation for March 17, 2020. That mediation fell through, but the Parties resolved to engage in additional settlement discussions and ultimately rescheduled the mediation. Prior to mediation, the Parties exchanged informal discovery related to the size and composition of the putative class and the underlying facts of the case.

On May 13, 2020, the Parties participated in a formal, full-day virtual mediation session with the Honorable Stuart E. Palmer of JAMS in Chicago, Illinois. Following arms-length negotiations, the Parties negotiated a settlement by which the Parties agree to resolve all matters pertaining to, arising from, or associated with the Litigation. The Parties then prepared and negotiated the final terms of the settlement over the next several months, resulting in the final Settlement Agreement now before the Court.

## III.     TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Class Action Settlement and are briefly summarized here:

### A.     Class Definition.

The Settlement Class is "All individuals employed by Defendant any time between June 1, 2018 and June 22, 2018 whose biometric identifiers and/or biometric information were captured, collected, obtained, stored, disseminated, transmitted or used by Defendant within the State of Illinois."

### B.     Settlement Payments.

The Settlement provides that Defendant will satisfy its monetary obligations through the Settlement Administrator, who will send checks directly to Settlement Class Members who are current employees of Defendant. A Settlement Class Member who is not a current employee of Defendant need only submit a simple form in order to provide the Settlement Administrator with

the information needed to remit payment.  Defendant has agreed to pay $550.00 per member per

member of the Settlement Class into the Settlement Fund; based on Defendant's representation

that there are 92 members of the Settlement Class, Defendant is required to contribute

$50,600.00 to the Settlement Fund.

> **C.**     **Prospective Relief.**

Defendant implemented a BIPA-compliant policy and collected consent forms from all

employees within mere weeks of installing the biometric timeclocks:  it established a written

retention policy for collected finger-scan data, providing written releases to its employees, and

made all BIPA-mandated disclosures.  Defendant will continue to abide by those policies.

> **D.**     **Payment of Settlement Notice and Administrative Costs.**

Defendant has agreed to pay from the Settlement Fund all expenses incurred by the

Settlement Administrator in, or relating to, administering the Settlement, providing Notice,

mailing checks, and any other related expenses.

> **E.**     **Payment of Attorneys' Fees, Costs, and Incentive Award.**

Defendant has agreed to pay Plaintiffs' reasonable attorneys' fees to proposed Class

Counsel in an amount to be determined by the Court.  Proposed Class Counsel has agreed not to

seek more than 35% of the Fund in attorneys' fees.  Defendant has also agreed to pay each

Plaintiff an incentive award in the amount of $1,500.00 from the Settlement Fund, subject to

Court approval, and resulting in $3,000.00 total in recognition of their efforts as Class

Representatives.

> **F.**     **Release of Liability.**

 Defendant shall be released from BIPA claims and all related claims, including statutory

and common law claims, including the alleged Breach of Express Contract; Breach of Express

Contract Implied in Fact; Unjust Enrichment; Intrusion Upon Seclusion; Conversion; Fraudulent

Concealment; and Negligence claims stemming from Defendant's alleged practice of capturing, collecting, storing, disseminating, and/or using the biometric identifiers and/or biometric information of their employees during the relevant time period:  June 1, 2018 to June 22, 2018.

## IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

Before the Court can preliminarily approve the proposed Settlement and direct notice to the Settlement Class, it must certify the class for settlement purposes, which requires a finding that the Court "will likely be able to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). District courts are given broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

To merit certification, the Settlement Class must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, because the Settlement provides for monetary relief, the Settlement Class must also satisfy the requirements of Rule 23(b)(3): that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Amchem*, 521 U.S. at 615–16. Finally, a certified class must be ascertainable; that is, "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites and is ascertainable, and thus, should be certified for settlement purposes.

### A.   The Numerosity Requirement is Satisfied.

A class action may proceed when the proposed class is so numerous as to render joinder impractical. Fed R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of

class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises forty (40) or more people. *See, e.g., id.* (certifying class of 120 members). Here, the proposed Settlement Class is sufficiently numerous, as Defendant has represented that 92 syncreon.US employees fall within the Settlement Class. The numerosity requirement is readily satisfied.

### B.    Common Issues of Fact and Law Predominate.

Rule 23(a)(2) instructs that a class may be certified only if there exist "questions of law or fact common to the class." Where, as here, the class seeks monetary relief, the common questions must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). *See also Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("The question of commonality and predominance overlap in ways that make them difficult to analyze separately."). Common questions are those "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification…[is] the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of this litigation." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted). As such, "the critical point is the need for conduct common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quotation marks omitted). When "the defendant's allegedly injurious conduct differs from plaintiff to plaintiff . . . no common answers are likely to be found." *Id.* (quotation marks omitted). But when "the same

conduct or practice by the same defendant gives rise to the same kind of claims from all class members," class treatment is appropriate. *Id.*

Here, common issues of law and fact clearly predominate. Plaintiffs and the proposed Settlement Class's claims are based upon the same common contention and course of conduct by their employer: syncreon.US allegedly violated BIPA by collecting employee fingerprints without obtaining informed written consent. (*See* Compl. ¶¶ 45–58.) This contention raises several issues of law and fact common to the Settlement Class that will predominate over any individualized issues, including: (1) whether Defendant collected, captured, or otherwise obtained Plaintiffs' and  the class's biometric identifiers or information (as defined by 740 ILCS 14/10); (2) whether Defendant properly informed Plaintiffs and the class of its purposes for collecting, using, and storing their biometric information, 740 ILCS 14/15(b); (3) whether Defendant obtained any written releases to collect, use, and store Plaintiffs' and the class's biometric information, *id.*; (4) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information, 740 ILCS 14/15(a); and (5) whether Defendant's alleged violations of BIPA were committed negligently, 740 ILCS 14/20 (an aggrieved party may recover damages "against a private entity that negligently violates a provision of this Act . . . ."). Since each of these questions will prove to have a common, classwide answer, and these questions will predominate over the litigation, the commonality and predominance requirements are satisfied.

### C.    The Adequacy Requirement is Satisfied.

The final Rule 23(a) prerequisite—adequacy—requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is twofold: "adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interests of

the class members." *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). To assess adequacy, courts examine whether "the named plaintiff has [(1)] antagonistic or conflicting claims with other members of the class; or (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)) (internal quotation marks omitted).

Here, both Plaintiffs and proposed Class Counsel have and will continue to adequately represent the Settlement Class. Because Plaintiffs suffered the same alleged injury as every other member of the Settlement Class—the collection and storage of their fingerprint data without informed written consent—their interest in redressing Defendant's alleged violations of BIPA is identical to the interests of all other members of the Settlement Class.

Thus, Plaintiffs do not have any interests antagonistic to those of the Settlement Class— their pursuit of this litigation under this minimally-tested and still-evolving statutory regime should be clear evidence of that. Put simply, Plaintiffs' interests are entirely representative of and consistent with the interests of the Settlement Class.

Likewise, proposed Class Counsel will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has retained counsel with substantial experience in prosecuting complex and consumer class action litigation.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

Accordingly, because Plaintiffs will fairly and adequately protect the interests of the class, and because they and the Settlement Class are amply represented by qualified counsel, the adequacy requirement is satisfied.

**D.     A Class Action Is A Superior Method Of Resolving The Controversy.**

Rule 23(b)(3) additionally requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule sets forth four criteria germane to this requirement. All counsel in favor of certification.

The first factor, individual class members' interest in individually controlling the action, Fed. R. Civ. P. 23(b)(3)(A), weighs in favor of certification. There is no indication any class member has brought an individual BIPA suit against Defendant.  Further, while BIPA provides for liquidated damages, the relatively modest recovery ($1,000 or $5,000, depending on whether a violation is negligent or reckless) compared to the high costs of retaining adequate counsel "is not likely to provide sufficient incentive for members of the proposed class to bring their own claims." *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (discussing the FDCPA's $1,000 statutory damages provision); *see also In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) ("While not trivial, BIPA's statutory damages are also not enough to incentivize individual plaintiffs given the high costs of pursuing discovery on Facebook's software and code base and Facebook's willingness to litigate the case.").

The second factor, the extent and nature of other proceedings, Fed. R. Civ. P. 23(b)(3)(B), also weighs in favor of certification. There are no other known actions that have progressed to any extent addressing the conduct alleged here. Thus, "'the extent and nature of any litigation concerning the controversy already begun by or against class members' is not a factor" counseling against certification. Fed. R. Civ. P. 23(b)(3)(B).

10

Third, it is plainly desirable to concentrate the litigation—and to undergo the settlement approval process—in this forum, *see* Fed. R. Civ. P. 23(b)(3)(C), given that this case concerns a proposed class of Illinois plaintiffs seeking relief from Defendant's Illinois-based alleged conduct. *Barnes*, 310 F.R.D. at 562 (third factor met where defendant conducted business and the events giving rise to plaintiffs' claims occurred within the court's district); *Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065, at *9 (E.D. Wis. June 11, 2014) (events in forum giving rise to lawsuit support concentration in the forum).

Finally, the fourth factor—"the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—also weighs in favor of certification, as no management problems ought to arise here. There is clear predominance of common issues, as explained above, and the fact that the existing employees within the Settlement Class are readily identifiable from Defendant's records will streamline the notice process and allow for checks to be mailed directly to those Class Members.  2 NEWBERG ON CLASS ACTIONS § 4:72 (5th ed. 2011) ("Courts generally hold that if the predominance requirement is met, then the manageability requirement is met, as well."). Thus, consolidating class members' claims in one proceeding will generate economies of time and expense and promote legal uniformity.

More generally, Rule 23's superiority standard requires that the court recognize "the costs *and benefits* of the class device." *Mullins*, 795 F.3d at 663 (emphasis in original). Here, requiring individual cases "would make no sense," because "each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal*, 318 F.R.D. at 76. Rule 23's superiority requirement is therefore satisfied.

### E.    The Class Is Ascertainable.

Finally, the proposed Settlement Class definition meets Rule 23's implicit requirement of "ascertainability," which "requires that a class . . . be defined clearly and based on objective

11

criteria." *Mullins*, 795 F.3d at 659. "Whether a class is ascertainable depends on 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class,'" although Plaintiffs here would meet both standards. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill. 2018) (citing *Mullins*, 795 F.3d at 658). Here, the Settlement Class definition is based solely on objective criteria: either an Illinois-based syncreon.US employee had his or her finger scanned by syncreon.US's biometric time clocks during the relevant time period or did not. Because the class is "defined clearly [and] membership [is] defined by objective criteria," it is ascertainable. *Mullins*, 795 F.3d at 657.

For all of these reasons, maintenance of this action as a class action is appropriate. The Court should therefore certify the Settlement Class for settlement purposes.

## V.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

Rule 23(e) requires judicial approval of all proposed class action settlements. As discussed above, the procedure for review of a proposed class action settlement is a familiar two-step process—preliminary and final approval—which was recently codified under Rule 23(e). Fed. R. Civ. P. 23(e)(1)-(2) (eff. Dec. 1, 2018); *see* 4 Newberg on Class Actions § 13:1 (5th ed.).

The first step—preliminary approval—is a preliminary, pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B). In other words, at this stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties.

*Manual for Complex Litig.* § 21.632 (4th ed. 2004). This initial evaluation "is a bit less strenuous than the final fairness assessment," given that at this early stage the Court need only determine whether the proposed settlement is "likely" to be found fair, reasonable, and adequate. *Wyms v. Staffing Sols. Se., Inc.*, No. 15-cv-0643-MJR-PMF, 2016 WL 6395740, at *4 (S.D. Ill. Oct. 28, 2016). Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step—the final fairness determination. *Gautreaux*, 690 F.2d at 621.

While "[f]ederal courts naturally favor the settlement of class action litigation," a multifactor test must be used to determine whether the proposed settlement is likely to be found fair, reasonable, and adequate. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)) (internal quotations omitted). Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

The proposed Settlement in this case—which creates a fund constituting $550 per person and sends checks directly to class members—easily satisfies these factors.

### A.     Plaintiffs and Proposed Class Counsel Have Adequately Represented the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and

in settlement negotiations. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. In considering this factor, courts are to examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. *Id.*; *see In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011) (approving settlement where the parties had not conducted any formal discovery but engaged in considerable informal discovery). Ultimately, this factor is generally satisfied where the named plaintiff participated in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2018 WL 4659274, at *3 (N.D. Ill. Sept. 28, 2018).

Here, Plaintiffs helped their attorneys investigate their BIPA claims and prepare the Class Action Complaint and Demand for Jury Trial, preserving documents, conferring with Class Counsel throughout the litigation, and reviewing and approving the Settlement Agreement before signing it.

Without Plaintiffs stepping up to represent the class and taking on these tasks as the lead plaintiffs the relief secured for the Settlement Class wouldn't have been possible. Given their efforts and aligned interest with the class, there can be no doubt that Plaintiffs have only acted in the best interest of the Settlement Class and have adequately represented them.

Likewise, proposed Class Counsel's performance in this case demonstrates that their representation has been beyond adequate, especially when considering (i) the investigation and informal discovery conducted and (ii) the benefits of the Settlement compared to similar privacy settlements, including those under BIPA. First, the considerable amount of investigation and informal discovery completed by Plaintiff's counsel ensured that they had adequate information

to assess the strength of the case and engage in settlement discussions. The facts underlying Plaintiffs allegations in this case—though by no means their legal import—are now substantially undisputed: syncreon.US used a fingerprint-scanning time clock to verify its employees' identities before implementing its BIPA-compliant policy. *See In re AT & T Mobility*, 270 F.R.D. at 350 (approving settlement where "the focus of th[e] litigation appears to be more on legal than factual issues, and there is no indication that formal discovery would have assisted the parties in devising the [p]roposed [s]ettlement [a]greement"). Furthermore, the Parties conducted informal discovery concerning the underlying facts of the case and the number of class members.

In short, the issues in this litigation have crystallized sufficiently for Plaintiffs and counsel to assess the strengths and weaknesses of their negotiating position (based upon the litigation to date, the anticipated outcomes of fact and expert discovery, and additional motion practice) and evaluate the appropriateness of any proposed resolution. *See Bayat v. Bank of the West*, No. 13-cv-2376, 2015 WL 1744342, at *6 (N.D. Cal. Apr. 15, 2015) (concluding that sufficient discovery had been completed to evaluate the settlement even though parties reached an early settlement "because the issues in this case are straightforward and not particularly fact intensive").

Second, the Settlement achieved by Plaintiff's counsel excels in comparison to other statutory privacy settlements. The result in this action appears against a historical backdrop in which privacy class actions have commonly secured no relief to the class or only *cy pres* relief. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Privacy Litig.*, No. C 10-00672

JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement).  In the end, if the Settlement is approved, the Settlement Class will reap its valuable benefits thanks to Plaintiffs' and proposed Class Counsel's hard work pursuing this case and representing their interests. This factor is well satisfied.

### B.      The Settlement Was Reached Without Collusion and As a Result of Arm's-Length Negotiations Between the Parties.

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The answer here is easy: yes.

Over the course of several months, the Parties engaged in informal discovery, leading up to a full-day mediation with vigorous negotiations, which resulting in agreement as to the key terms of the settlement.  And even after the principle terms were determined, it took the Parties several more months to reach the detailed terms of the Settlement now before the Court.  The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it provides significant cash payments to Settlement Class Members, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where there is "no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation").

For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered") (internal quotation marks omitted).

16

### C.     The Settlement Treats All Settlement Class Members Equally.

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, given that each Settlement Class Member has nearly identical BIPA claims for monetary and injunctive relief, the proposed Settlement treats each of them identically. In terms of monetary relief, Defendant has agreed to contribute $550.00 per member of the Settlement Class to the Settlement Fund, from which each Settlement Class Member will receive a single, *pro rata* cash payment; *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").  Because the Settlement treats each member of the Settlement Class equally, this factor is well satisfied.

### D.     The Relief Secured for the Settlement Class Is Adequate and Warrants Approval.

The final and most substantive factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to take into account several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *Id.*  As explained below, each of these sub-factors demonstrate that the Settlement provides extraordinary relief to the class and should be approved.

#### 1.     The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval.

In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits.

17

Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 amendment. The Settlement here warrants approval because it provides immediate relief to the Settlement Class while avoiding potentially years of complex litigation and appeals. *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). And in light of BIPA's relative infancy, absent the Settlement, the Parties were likely to litigate a number of issues that are either still being resolved by the courts or are matters of first impression. *See*, *e.g.*, *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (noting that "legal uncertainties at the time of settlement favor final approval"); *Pichler v. UNITE*, 775 F. Supp. 2d 754, 759 (E.D. Pa. 2011) (approving class action settlement in light of the complexity of future litigation on issues of first impression). For instance, Defendant was likely to argue that the information captured by its fingerprint scanners were not actually "biometric identifiers" or "biometric information" subject to BIPA. And like numerous other BIPA defendants, Defendant was expected to assert that it informed employees of the extent of its purposes for collecting fingerprints and obtained consent to collect them. Plaintiff intended to defeat these legal and factual arguments at summary judgment and/or trial, but the Settlement provides relief to the Settlement Class without the delay necessitated by briefing and a trial on these questions.

Likewise, the Parties also would have been forced to litigate the issue of class certification adversarially. See Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor). Although Plaintiff believes this case is amenable to class certification given Defendant's uniform conduct, that process is by no means risk-free. And even if Plaintiff

had succeeded at class certification, summary judgment, and/or trial, Plaintiff expected that Defendant would argue for a reduction in damages based on due process in light of the significant potential statutory damages at issue. *See, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003). Protracted litigation would also consume significant resources, including the time and costs associated with formal written and oral discovery, securing expert testimony on complex biometric and data storage issues, and again, motion practice, trial and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now . . ." *In re AT & T Sales Tax Litig.*, 789 F. Supp. at 964. Because the proposed Settlement offers immediate—and substantial—monetary relief to the Settlement Class and a prompt end to Defendant's alleged misconduct while avoiding the need for extensive and drawn-out litigation, preliminary approval is appropriate. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 2. The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval.

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53. The proposed Settlement here does just that by sending checks directly to every class member who is a current employee and by simply requesting that former employees submit simple documentation. *See Taylor v. Sunrise Senior Living Mgmt., Inc.*, 2017-CH-15152 (Cir. Ct. Cook Cty. Feb. 14, 2018) (granting final approval of BIPA settlement similarly providing settlement

19

checks directly to class members); *Lloyd*, 2018-CH-15351 (same). There can be no doubt that the proposed settlement administration plan is the most effective and feasible method of distributing monetary relief to the Settlement Class Members.

### 3. The terms of the requested attorneys' fees are reasonable.

The third and final relevant sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of the requested attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, proposed Class Counsel plans to petition the Court for an award of reasonable attorneys' fees after the Settlement Class has received notice of the Settlement. The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) and its limit on attorneys' fees (i.e., no more than 35% of the Settlement Fund) are reasonable and predicated on the outstanding relief provided to the Settlement Class. To be sure, the percentage of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and a 35% award falls comfortably within the range of typical fee awards in these cases. *See, e.g.*, *Sekura*, 2015-CH-16694 (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (awarding 40% of fund); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566 (awarding 40% of fund); *see also* 5 NEWBERG ON CLASS ACTIONS § 15:83 (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Accordingly, that the Settlement permits the Court to award 35% of the fund in attorneys' fees is more than appropriate.  These terms are reasonable and should be preliminarily approved.  For these reasons, Plaintiff and proposed Class Counsel submit that the relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. The Court should grant preliminary approval.

## VI.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Rule 23 and Due Process require that for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)[,] the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement, voluntary dismissal, or compromise.]" Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (eff. Dec. 1, 2018). The substance of the notice to the Settlement Class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the Settlement Class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement contemplates a multi-part Notice Plan. First, Defendant will simply deposit Settlement Payments by direct deposit or direct check to current employees who are part of the Settlement Class.  Second, Defendant will provide the Settlement Administrator with a list of all names, e-mail addresses, and U.S. Mail addresses of former employees within the Settlement Class.  The Settlement Administrator shall run the Class Members' addresses through the U.S. Postal Service's National Change of Address database and mail the Notice using the most current mailing address information.  If a Notice is returned as undeliverable with a forwarding address, the Settlement Administrator shall resend by first class mail the Notice to that forwarding address.  If a mailing address is not available or if a Notice is returned as undeliverable without a forwarding address, the Settlement Administrator shall send the Notice

21

via email.  Only if Notice to a forwarding address is undeliverable and the email Notice is returned as undelivered, then the notice mailing and email process shall end for that Class Member.

In sum, the proposed methods for providing notice to the Settlement Class comports with both Rule 23 and Due Process, and thus, should be approved.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the Notice to the members of the Settlement Class, (iv) appointing Plaintiffs Shacarah Scott and Joshua Tucker as Class Representatives, (v) David Cates and Chad Mooney of Cates Mahoney as Class Counsel, (vi) scheduling a final fairness hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.


Dated:  November 9, 2020                              Respectfully submitted,

                                                                         **SHACARAH SCOTT and JOSHUA**
                                                                         **TUCKER, individually and on behalf of all**
                                                                         **others similarly situated**

                                                                         By: /s/David Cates
                                                                             One of Their Attorneys
                                                                             CATES MAHONEY, LLC
                                                                             216 West Point Drive.
                                                                             Swansea, IL 62226
                                                                             Phone: 618-277-3644
                                                                             Fax:  618-277-7882
                                                                             E-Mail:  dcates@cateslaw.com

## CERTIFICATE OF SERVICE

I, David Cates, an attorney, hereby certify that on November 10, 2020, I caused a true and correct copy of **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** to be served on counsel of record via the Court's ECF system.

_/s/ David Cates_