UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHACARAH SCOTT and JOSHUA TUCKER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>SYNCREON NORTH AMERICA, INC.,<br><br>        Defendant. | Case No.: 3:19-cv-00164-SMY-MAB<br><br>Judge Staci M. Yandle |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

**I.      INTRODUCTION**

Plaintiffs Shacarah Scott and Joshua Tucker ("Plaintiffs"), on behalf of themselves and a putative class, filed this case on February 11, 2019, alleging that Defendant syncreon.US, Inc.[1] ("Defendant" or "syncreon.US"), violated Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 et seq., by collecting employee fingerprints without providing the requisite disclosures or obtaining informed written consent. As a result of that lawsuit and the Plaintiffs' efforts over the course of the litigation, a settlement was reached which will result in automatic payments to the class members.

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs, by and through Class Counsel, respectfully submit their Memorandum of Law in Support of their Motion for Final Approval of Settlement with Defendant Syncreon North America, Inc. ("Syncreon" or "Defendant"), in which they request final approval of the Settlement, final approval of the plan of Distribution, and final approval of the Notice Plan disseminated to Class Members.

---

[1] Plaintiffs incorrectly named syncreon.US, Inc. as Syncreon North America, Inc. in their Complaint.

Some BIPA settlements have been for zero cash and given the class credit monitoring. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cty. Jun. 6, 2018). Not so here. Defendant has agreed to create a fund of $50,600 consisting of $550.00 per Settlement Class member, and—after fees and costs are deducted—checks will be sent directly to all Settlement Class members who are current employees. For Settlement Class members who are former employees, Class Members need only submit a simple form in order to receive a check.

Class action settlements are reviewed for approval in a well-established two-step process. 4 NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2011). First, the Parties present the settlement agreement for preliminary approval to the Court, and the Court determines whether it will "likely be able to" grant final approval of the agreement, determining whether the Class should be notified of the settlement, conditionally certifying the class, and setting the case for a final fairness hearing. *Id.*; *see also* Fed. R. Civ. P. 23(e)(1)(B). If preliminarily approved, notice is then sent to the Settlement Class and any objections or exclusions from the Settlement Class are collected.

Second, the Court holds a final fairness hearing to determine whether the settlement is "fair, reasonable, and adequate," and should be finally approved. *See* 4 NEWBERG ON CLASS ACTIONS § 13:39; *see also* Fed. R. Civ. P. 23(e)(2).

This matter is at the final stage. The Court has already preliminarily approved the settlement [Doc. 47] and should now grant final approval.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Illinois' Biometric Information Privacy Act.

Recognizing the "very serious need" to protect Illinois citizens' biometric data—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—the Illinois Legislature unanimously passed BIPA in 2008 to provide individuals recourse when companies

failed to appropriately handle their biometric data in accordance with the statute. (740 ILCS 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:"

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . .

740 ILCS 14/15(b). BIPA also requires any company in possession of biometric data to establish a publicly-available retention schedule and guidelines for permanently destroying biometric data. 740 ILCS 14/15(a). BIPA further requires companies in possession of biometric data to protect the data from disclosure using a reasonable standard of care, 740 ILCS 14/15(e), prohibits companies from selling or otherwise profiting from a person's biometric data, 740 ILCS 14/15(c), and prohibits them from disclosing or disseminating biometric data except with consent or under limited circumstances. 740 ILCS 14/15(d). BIPA allows for the recovery of damages in the amount of $1,000 for each negligent violation—or $5,000 for each willful violation—plus costs and reasonable attorneys' fees. *See* 740 ILCS 14/20.

**B.  Plaintiffs' Allegations and Defendant's Biometric Timekeeping System.**

Plaintiffs allege that they worked for syncreon.US "during the relevant time period" and that they provided their "biometrics, in the form of fingerprints" to syncreon.US. (Compl. ¶¶ 45–46.) Plaintiffs allege they were "required" to provide their fingerprints to syncreon.US and then

scan their fingers to "clock-in" and "clock-out" of work using syncreon.US's "biometric timekeeping mechanisms." (*Id.* ¶¶ 46–47.) Plaintiffs further allege that syncreon.US captures, collects, stores, and uses employees' "fingerprints" for timekeeping and payroll purposes. (*Id.* ¶ 26.) According to Plaintiffs, they were not informed in writing that their purported biometric information was being collected, nor provided with a written release. (*Id.* ¶ 49.) Finally, Plaintiffs allege that they experience "mental anguish and injury when they think about the status of their biometrics." (*Id.* ¶ 57.)

        **C.**     **Litigation, Mediation and Settlement.**

On February 11, 2019, Plaintiffs filed their Complaint in the United States District Court for the Southern District of Illinois. Defendant moved to dismiss Plaintiffs' BIPA claims and multiple common law claims on the grounds that Plaintiffs failed to plead negligence, recklessness, or intent, that their common law claims were duplicative or otherwise failed to state a claim, and that their claims were preempted by the Illinois Workers' Compensation Act. The parties fully briefed that motion, then sought a stay to discuss settlement opportunities. The Parties scheduled a mediation for March 17, 2020. That mediation fell through, but the Parties resolved to engage in additional settlement discussions and ultimately rescheduled the mediation. Prior to mediation, the Parties exchanged informal discovery related to the size and composition of the putative class and the underlying facts of the case.

On May 13, 2020, the Parties participated in a formal, full-day virtual mediation session with the Honorable Stuart E. Palmer of JAMS in Chicago, Illinois. Following arms-length negotiations, the Parties negotiated a settlement by which the Parties agree to resolve all matters pertaining to, arising from, or associated with the Litigation. The Parties then prepared and negotiated the final terms of the settlement over the next several months, resulting in the final

Settlement Agreement. This Court granted preliminary approval on January 6, 2021 and approved the Notice plan. [Doc. 47]. The Court set a final fairness hearing for May 6, 2021 at 9:30 a.m.

### D.     Class Notice

Pursuant to the Court's Order granting preliminary approval, the parties retained CPT Group as administrator of the Settlement and provided notice as approved in that Order. [See Doc. 47]. CPT Group mailed the approved notice on February 5, 2021 and has provided weekly updates to Class Counsel and Defendant of the status. The most recent report from April 16, 2021 is attached hereto as Exhibit A, and indicates that of 92 notices mailed, 3 were returned, 2 were remailed and only 1 of the 92 notices cannot be remailed as no address can be found. [See Ex. A]. There were no opt-outs and no objections filed to the settlement. [See Ex. A]. The final figures from CPT show that of the 92 Class members, 63 no longer worked at Defendant. The 29 current employees will automatically receive their payment if approved. Of the 63 who were sent notice, 3 were returned as undeliverable and were resent, with only 1 remaining undeliverable. CPT received 27 responses in response to mailed notice, with one response received after the deadline. Thus, 56 Class Members responded to the notice and elected to claim benefits, reflecting an over 60% participation rate.

### III.    LEGAL STANDARD

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (citation and internal quotation marks omitted).  Courts favor the resolution of

a class action by way of settlement and will approve such a settlement if it is fair, reasonable, and adequate when viewed in its entirety. *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000), *aff'd sub nom. In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985); *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982). Courts "'do not focus on individual components of the settlement but ratherview them in their entirety in evaluating their fairness.'" *Isby*, 75 F.3d at 1199[2] (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980)).

The Seventh Circuit has identified several factors that a Court may consider in evaluating the fairness of a class action settlement: (1) the strength of the plaintiff's case on the merits measured against the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement among affected parties; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings; and (6) the amount of discovery completed. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also Isby*, 75 F.3d at 1199.[2] It remains the court's task to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing

---

[2] The amendments to Fed. R. Civ. P 23(e), which become effective on December 1, 2018, require courts to analyze a functionally equivalent set of factors, including whether: (A) the class representatives and adequately represented the class; (B) the proposal was negotiated at arms'-length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of the proposed method of distributing relief to class members, and (iii) the terms of a proposed award of attorneys' fees, and (D) the proposal treats class members equitably relative to each other. As this brief demonstrates, all these factorsweigh in favor of final approval.

the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citationand internal quotation marks omitted).

Because the Seventh Circuit has endorsed an overriding public interest in favor of the settling of litigation, particularly class actions, *see Isby*, 75 F.3d at 1196 ("[f]ederal courts naturally favor the settlement of class action litigation"), the proceedings to approve a settlement should not be transformed into an abbreviated trial on the merits. *See, e.g., Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987). In addition, "[a] strong presumption of fairness attaches to a settlement agreement when it is the result of this type of [arm's length] negotiation." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (citing *Anderson v. Torrington Co.,* 755 F. Supp. 834, 838 (N.D. Ind. 1991)). In evaluating a proposed settlement, the court must recognize that the "essence of settlement is compromise" and will not represent a total win for either side. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at1014 (citing *Isby*, 75 F.3d at 1200).

## IV. ARGUMENT

### A. All Relevant Factors Support Approval of the Settlement.

Consideration and analysis of each of the six relevant Seventh Circuit fairness factors weigh strongly in favor of final approval of the proposed Settlement. Plaintiffs and their Counsel have examined the facts, the applicable law, and the arguments Defendant has raised in defense to Plaintiffs' claims; weighed the benefits secured by the proposed Settlement against the risks and costs of further litigation; have conducted all of their settlement negotiations at arm's length; have prosecuted the action and were able to discover substantial evidence from Defendant; have entered Settlement at an appropriate time; and they have determined that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class.

       **1.**       **The Strength of Plaintiffs' Case Compared to the Terms of the Settlement Supports Approval of the Settlement.**

Plaintiffs' claim is based on a strict liability theory of damages resulting from a violation of the Illinois Biometric Information and Privacy Act ("BIPA"). Plaintiffs asserted that the Defendant violated the statute by capturing BIPA protected information in violation of the Act and storing it in violation of the Act. The Defendant has denied that it can be liable for violating the Act because it lacked the requisite mental state to do so and further denies that Plaintiffs can be compensated at all because their exclusive remedy is not the Act but rather a claim that would be heard exclusively in the worker's compensation realm. Defendant has maintained these defenses throughout the litigation.

       **a.**       **Plaintiffs' Claims Are Uncertain.**

Class Counsel continues to believe that the claims against Defendant are meritorious and could be proven at trial. Class counsel has devoted time and resources without any certainty of result because Class Counsel believed in the merits of the case. Nevertheless, there is no certainty that Plaintiffs would prevail. The issue of whether or not a mental state is required is not settled in Illinois law. Further, the Illinois Supreme Court is currently considering whether or not worker's compensation is the exclusive remedy for alleged BIPA violations. *See McDonald v. Symphony Bronzeville Park, LLC,* No. 1-19-2398, (Order of Illinois Supreme Court granting leave to appeal.) Should the Illinois Supreme Court conclude that worker's compensation is the exclusive remedy, Plaintiffs claims would be dismissed under BIPA. Further, should an Illinois court determine that Plaintiffs must prove intent to violate BIPA, Plaintiffs claims would further be unlikely to prevail.

       **b.**       **The Proposed Settlement Provides Value to the Class Members.**

The parties have agreed to settle this case and create a settlement fund of $50,600.00. This represents a value to each Class Member of $550 prior to deductions for administration, fees and incentive awards. This Settlement results in a substantial win for the Class Members. As has been previously noted to the Court, the Defendant only collected BIPA information for approximately 2 weeks before being notified by Plaintiffs that they were potentially violating Illinois law. Thereafter, the Defendant sought releases from every employee to collect BIPA protected information. Every Class member except one of the named Plaintiffs signed the release agreeing to allow the Defendant to collect BIPA information. Nonetheless, even though the Class members subsequently agreed to let Defendant continue collecting BIPA information, those Class members will still receive a payment.

Further, this Court should note that because "[t]he essence of settlement in compromise," *Hiram Walker,* 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200, *see also Armstrong*, 616 F.2d at 315 (noting that "the essences of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes.") Parties to a settlement benefit by resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889 (citations omitted). This settlement may result in less than a plaintiff could have received if the Defendant was held liable for a strict violation of BIPA as proven at trial and after an appeal. Considering, however, the potential for no recovery, adverse decisions from Illinois courts and the fact that all plaintiffs except one waived their rights under

BIPA shortly after Defendant began collecting BIPA information, the settlement is a substantial recovery under the circumstances.

### c. The Defendant Was Well Funded and Represented.

According to various reports, Defendant has over 300 employees and generates over $174,000,000 in sales per year. The law firm that represented Defendant is even larger. Shook Hardy Bacon is ranked as the 87th largest law firm in the United States with over 400 attorneys in 17 offices and 1400 other employees. Despite these resources, Plaintiffs' counsel was willing and able to meet the challenge of every motion and pursue every avenue of recovery. Despite Plaintiffs' resources, "an integral part of the strength of a case on the merits is the consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

The Defendant had the resources and capability to challenge every issue in the case, not just at trial, but on appeal to the Seventh Circuit and the U.S. Supreme Court. The risks that Plaintiffs faced in this litigation on the various defenses raised by Defendant remained throughout the litigation. Plaintiffs could have prevailed at trial only to lose later at an appeal. To succeed absent a settlement, Plaintiffs would have had to win on every issue not just in the trial court but in the appellate courts. Further, Plaintiffs would have had to hope that other cases Plaintiffs were not involved in but concerned the application of BIPA would also have resolved positively.

In light of these considerable risks and the recovery achieved, the Settlement is appropriate and endorsed by counsel and the Plaintiffs. Considering the strength of the case against the recovery achieved, the first factor strongly supports settlement.

### 2. The Complexity, Cost and Expense of Continued Litigation Supports Approval of the Settlement.

The second factor for the Court to consider focuses on the complexity, length, and expense of the litigation that will be avoided by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1014. As noted above, Defendant has aggressively defended this case. Though the case has not been pending for several years, there is little doubt that without a resolution, litigation would be pending for substantially many more years which would include trial and appeal.

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Fitzsimmons*, 778 F.2d at 309. This is because "the more complex, expensive and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013)( ciations and internal quotation marks omitted); *Cardiology Associates, P.C. v. Nat'l Intergroup, Inc.,* No. 85 Civ. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987)("There is substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away.").

Plaintiffs were prepared and were ready and willing and able to try this case to verdict. But this proposed Settlement provides significant relief to Class Members now, and avoids the risk of (1) any further delay associated with the inevitable appeals of any successful verdict; (2) the loss of a successful verdict on appeal; (3) an unsuccessful trial verdict; (4) adverse rulings that would impact this case from Illinois courts of review; and (5) continued litigation costs that are paid by Class Counsel and by extension the Class as such litigation costs are typically deducted from any common fund recovery. When compared to the continued costs and delay associated with ongoing litigation, the certainty of the significant recovery achieved by settlement today is especially

compelling. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). "To most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). This second factor, too, therefore weighs strongly in favor of final approval.

### 3. The Reaction of the Class Supports Approval of the Settlement.

Notice to the Class has been completed and the Opt-out date (March 22, 2021) and Objection Date (March 22, 2021) as set in the preliminary approval order [Doc. 47] have both lapsed. As noted in Exhibit A, there were no requested exclusions and no objections received. Given that the acceptance of the settlement by the Class is unanimous, this factor also supports approval of the settlement.

### 4. The Settlement Was the Result of Arms' Length Negotiations, and Is Endorsed by Competent Counsel for All Parties.

As noted in the motion for preliminary approval, adopted herein by reference, the settlement was the result of arm's length negotiations facilitated by a mediator and was conducted by counsel for both parties who were well versed in the various strengths and weaknesses of this case.

#### a. Class Counsel Endorses the Settlement.

Courts are to place significant weight on the unanimously strong endorsement of a settlement class counsel. *See, e.g., Isby*, 75 F.3d at 1200; *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) (negotiations entitled to great

deference). Further, courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325); *Isby*, 75 F.3d at 1200, although they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Nonetheless, great weight is accorded to the recommendations of counsel, "who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval").

Here, Class Counsel endorses this settlement. Class Counsel has participated in numerous other class action litigations and settlements across Illinois and the United States. [See Doc. 45-3, Ex. 2]. That experienced counsel endorses the settlement factors in approval of the settlement.

In recommending this settlement, Class Counsel is aware of the strengths and vulnerabilities of the case having dedicated substantial time to this case and to the particular legal issues surrounding the potential for recovery. Class Counsel also believes that the recovery in this case is fair given the various factual circumstances described above and alleviates the uncertainties and legal vulnerabilities that still exist in this case. *See Kleen Prods. LLC v. Int'l Paper Co.*, No. 1:10-cv- 05711, 2017 WL 5247928, at *3 (N.D. Ill. Oct. 17, 2017); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 at 1020 (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").

      **b.**      **The Settlement Was the Result of Arm's Length Negotiations Without Collusion.**

Though no objections have been filed, it is still important to highlight that there is no indication, nor could there be, that this settlement was reached as a result of collusion. *See Isby*, 75 F.3d at 1200. The parties discussed the potential resolution at various points during the case but could not reach a resolution. As described in the motion for preliminary approval and incorporated herein by reference, only after the parties retained an experienced mediator and had a full day session with him was a preliminary resolution reached. It still took more negotiations after that session to reach a final resolution to be submitted to the Court. Because this settlement is the result of arm's length negotiations conducted by experienced and skilled Class Counsel, this fourth factor therefore also weighs in favor of the approval of the proposed Settlement.

## 5. The Discovery Completed and Stage of Litigation Favor Approval of the Settlement.

As noted in the motion for preliminary approval, this case settled after discovery had been exchanged in this matter. The discovery necessary to determine the various factual issues related to potential liability were part of the materials exchanged. There were no depositions taken. This case was amenable to an earlier resolution with limited discovery because much of the disputed issues were questions of law not fact. Thus, it would have fallen to this Court to resolve much of the remaining disputed issues in this case. There was a dispute that BIPA information was collected by Defendant, but Plaintiffs believed they could prove that BIPA information was in fact collected. The only other fact discovery necessary was to determine how many times collection had taken place and how many employees were impacted. That discovery was completed. The questions as to whether a particular mental state was required for liability or whether an employee could recover for a BIPA violation outside the confines of a worker's compensation claim were purely legal questions that discovery would not elucidate. Thus, for purposes of settlement, the facts were

established and the case had sufficiently progressed to allow the parties to discuss an appropriate resolution.

As a result, this proposed settlement satisfies each of the six factors that the Seventh Circuit uses to evaluate the fairness of a proposed settlement. This settlement is fair, reasonable and adequate. Plaintiffs respectfully request that the Court approve it.

### B. The Plan of Distribution Should be Finally Approved.

As with any all aspects of class action settlements, this Court must ensure that any allocation plan is reasonable and equitable to all class members. *See Hiram Walker*, 768 F.2d at 891 (considering the reasonableness of settlement disbursement). Here, the plan of distribution was preliminarily approved by the Court on January 6, 2021. [Doc. 47]. The plan was specifically designed to maximize participation of the Class and for their benefit.

Allocating funds equally is consistent with the claimed injuries and damages, in that all members of the Class were injured in the exact same way and to the exact same statutory extent. Thus, this distribution is the only fair and equitable way to allocate the funds among the Class.

Plaintiffs respectfully request that the Court approve the proposed allocation.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant final approval to the proposed Settlement; find that the allocation method and amount is fair and reasonable and approve that as well, and for any and all other relief this Court deems necessary to effectuate the final approval of the settlement.

Respectfully Submitted,


By: /s/David Cates
DAVID CATES #6289198
CHAD M. MOONEY #6311237
CATES MAHONEY, LLC
216 West Pointe Drive, Suite A
Swansea, IL 62226
Telephone: (618) 277-3644
Facsimile: (618) 277-7882
Email: dcates@cateslaw.com
Email: cmooney@cateslaw.com
*Counsel for Plaintiffs and the Class*


## CERTIFICATE OF SERVICE

I, hereby certify that on April 22, 2021, I caused a true and correct copy of the "PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW" to be served on counsel of record via the Court's ECF system.


/s/David Cates